UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LINDA S. ALLEN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-cv-1262 |
| ) | |
| JOHN E. POTTER, Postmaster ) | |
| General, United States ) | |
| Postal Service, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment [Doc. 41], accompanying Memorandum [Doc. 42] and Statement of Facts [Doc. 43] all filed on January 16, 2007. Plaintiff filed a Response [Doc. 45] and an accompanying Memorandum [Doc. 46] on February 16, 2007. Lastly, Defendant filed a Memorandum in Reply [Doc. 47] on March 5, 2007. For the following reasons, Defendant's Motion is GRANTED.

**I.
BACKGROUND**

Post office employees often like to work overtime – they can get paid up to double their hourly rate. Plaintiff, Linda Allen, is an African American and has brought suit alleging that she was denied overtime by the United States Postal Service because she is an African American and because she had previously complained of discrimination. Specifically, she

alleges that she was denied overtime on two dates: May 16, 1998 and June 20, 1998.[1]

There were five employees in Plaintiff's working group who requested overtime in the Peoria post office and, under the post office policy, they were awarded overtime based upon seniority. They each signed an Overtime Desired List ("OTDL") and were eligible for overtime. In order of seniority, the employees were Plaintiff, Joe Leonard, Eldon Leezer, Terri Baxter, and Pat Downs. [Doc. 46 at 12.]

Overtime was dispensed on a rotational basis. Accordingly, Plaintiff received the first overtime opportunity, then Leonard, Leezer, Baxter and finally, Downs. After Downs had an opportunity for overtime, the list started back at the beginning and Plaintiff could get a second opportunity for overtime. [Doc. 46 at 12.] However, there were several exceptions to this standard policy. First, if someone is given the opportunity to work overtime and they decline then they are passed over and not given an opportunity to work overtime until their name comes around again on the list. Next, if an employee is working or scheduled to work when an overtime is needed, then that person is passed over and an overtime is offered to the next person on the list. [Doc. 46 at 12.] Furthermore, an employee can also

---

[1] This case was not filed until 2004. Defendant has not raised a statute of limitations defense so this issue will not be addressed.

2

receive unscheduled overtime. For instance, if a need for overtime arises and was not planned, the overtime can be offered to an employee who is not on the OTDL. Finally, if an employee was more than five minutes late clocking out, then they forfeit their next overtime opportunity.[2]

### A. MAY 16, 1998

On Friday, May 8th, 1998, Plaintiff worked overtime. [Doc. 42 at 14; Doc. 46 at 13.] On Wednesday, May 13th, the postal manager, Jerry Redshaw, prepared the overtime schedule for the next week. The next available shift that required overtime was May 16th, 1998. Since no employee had worked overtime since the previous Friday, Redshaw scheduled Leonard, the next in line, for overtime on May 16th.

When Leezer was finishing his shift that Wednesday, the post office needed someone to work overtime and he was the only person around. As a result, on May 13th Leezer worked overtime for approximately an hour. Then on May 15th, under the same circumstances, Leezer again worked overtime. According to Defendant, neither of these shifts affected the rotation because these were unscheduled overtimes. As a result, on May 16th, Leonard worked the shift that he was assigned to work.

---

[2] There is a periphery dispute about this "five-minute policy" which is discussed <u>infra</u>.

Plaintiff, on the other hand, alleges that she was entitled to work overtime on May 16th, 1998.  According to Plaintiff, after she was offered overtime on May 8th and she accepted, the same overtime shift was then offered to the next two people available – Leonard and Baxter and they declined (Leezer, who was between Leonard and Baxter on the list, was on his regular shift on May 8th, so he was not eligible for the shift).  As a result all three had lost an opportunity to work overtime and should have been passed over.  When May 16th came around, it was Down's turn for overtime.  However, according to Plaintiff, the overtime shift on May 16th occurred during Down's scheduled work hours, so the overtime should have been offered to Plaintiff.

Plaintiff emphasizes two points regarding the May 8th incident. First, Plaintiff points out that she had a conversation with Redshaw before the 16th in which she pointed out his mistake.  Also, Plaintiff emphasizes that Defendant did not keep a list of overtime worked and overtime rejected.  In particular, Plaintiff points out that the collective bargaining agreement ("CBA") between the Post Office and the American Postal Workers Union requires Defendant to keep such a list.

**B. JUNE 20, 1998**

On June 20th, Leonard again worked an overtime shift. According to Plaintiff, she was also entitled to work the scheduled overtime for June 20th. She alleges that she was originally scheduled to work overtime on the 20th. However, Redshaw created a new Post Office policy that stated that if a person was late clocking out then they lost their next opportunity to work overtime. So, for example, if Plaintiff was more than five minutes late clocking out, then that would count as her overtime and she would lose her next chance to work overtime.

In this case, there is no dispute that such a policy was in place. And, there is no dispute that Plaintiff was late clocking out on June 16th, 1998, and as a result, was passed over for the overtime shift on June 20th.

However, Plaintiff alleges that the policy was created after she had clocked out late on June 16th and was only applied retroactively to her. According to Plaintiff's deposition, Redshaw did not inform Plaintiff and the other employees of the new policy until the 19th, and he applied the policy retroactively to her for clocking out late on the 16th, by taking away her chance for overtime on the 20th. [Allen Dep. 120-123.] Furthermore, Plaintiff states that she was the only employee to lose an overtime shift for clocking out late.

5

In addition, Plaintiff also points to the United States Postal Service Time and Attendance Handbook which provides that when an employee is more than five minutes late clocking out and the employee was not permitted to work overtime then the supervisor must disallow the time on the clock that was not worked.  Plaintiff emphasizes that there is nothing in the Handbook about counting that infraction as overtime and denying that person their next overtime opportunity.

Now, Plaintiff has brought suit alleging that she was denied approximately eight hours of overtime in retaliation for previous complaints and because of her race.  She has brought suit under Title VII of the Civil Rights Act of 1964, as amended.  42 U.S.C. § 2000(e).

## II.
## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The movant may meet this burden by

6

demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2nd 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## III.
## ANALYSIS

Plaintiff's case fails on numerous grounds.  First, and foremost, Plaintiff's claims fail because she has not suffered an adverse employment action.  Next, Plaintiff's "direct method" argument fails because she cannot establish that there is a causal connection between either her race or her complaints and the two times that she was denied overtime.  And finally, Plaintiff's comparisons to similarly situated co-workers fall short.

Before these issues can be addressed it is necessary to review the applicable law.  When the issue before the Court is "retaliation," the law is clear: Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).  This type of discrimination is commonly called "retaliation."  "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting

8

method." Moser v. Ind. Dept. of Corr., 406 F.3d 895, 903 (7th Cir.2005). Under the direct method, a plaintiff must show that "(1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) [there was] a causal connection between the two." Id.

To prove retaliation under the "indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: (1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in [the] statutorily protected activity." Id. "If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action." Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir.1998); McDonnell Douglas, 411 U.S. 792. "If the employer meets its burden, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual." Moser, 406 F.3d at 904.

In the case at bar, Plaintiff alleges that she can demonstrate a retaliation claim and defeat summary judgment through both the direct and the indirect method.[3]

---

[3] Plaintiff also alleges that she was subject to race based discrimination. However, the primary focus of her brief is that

9

First, Plaintiff has not pointed to an adverse employment action worthy of a federal court's attention. Under both the direct and indirect method, Plaintiff is required to show that she suffered an "adverse employment action." Plaintiff argues that she suffered an "adverse employment action" because she suffered "a significant change in benefits." Burlington Industries v. Ellerth, 524 U.S. 742 (1988).

The Seventh Circuit has specifically held that a de minimus change in an employee's income does not amount to an adverse employment action. Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996).

In matters involving overtime, courts have held that a plaintiff has adequately alleged an adverse employment action when they have suffered a broad denial of overtime opportunities. See, e.g., Gasser v. Ramsey, 125 F.Supp.2d 1 (D.D.C. 2000). However, the alleged loss of two overtime shifts amounting to less than eight hours worth of overtime does not rise to the level of a systematic denial of Plaintiff's opportunity to work overtime. See, e.g., Hansen v. Perry Technologies, 206 F.Supp. 1223, 1235 (S.D.Fla. 2002)(holding

---

she was subject to retaliation. And, the evidence that she puts forward on both claims is identical. Since both claims require the same form of analysis and include an adverse employment action as an element, the Court will only address Plaintiff's claim of retaliation. But note, the same reasoning applies to Plaintiff's claim of discrimination.

that the denial of an opportunity to work in a different part of a manufacturing plant which would have briefly included more overtime hours did not amount to a significant change in benefits).

Plaintiff admits that she was given an opportunity to work numerous overtime shifts before and after the two alleged incidents and there were other overtime opportunities available. This undermines any claim that she suffered a significant change in benefits. See Rhodes v. Ill. Dep't of Transp. 359 F.3d 498, 505 (7th Cir. 2004)(holding that the loss of one day's wages was negligible and did not qualify as an adverse employment action); Leggett v. Milwaukee county, 04-C-422, 2006 WL 3289371 (E. D. Wis. November 8, 2006)(holding that a change in policy at a juvenile detention facility that limited women's opportunities for overtime did not amount to a significant change in benefits because other overtime opportunities were still available). As a result, Plaintiff cannot demonstrate that she was subject to an adverse employment action.

Next, Plaintiff's claim fails under the direct method because Plaintiff cannot establish a causal connection between her previous complaints and the two times when she was allegedly denied overtime. Plaintiff argues based upon the May 16th incident, that she can establish a causal connection because Redshaw did not follow post office policies. According to

Plaintiff, because Redshaw did not keep a recorded account of overtime eligibility, he must have been motivated by a desire to retaliate against Plaintiff when he denied Plaintiff overtime.

However, the fact that Redshaw did not follow a Post Office policy and keep proper records does not establish a causal connection to a retaliatory animus. When an individual does not keep complete records on a subject their actions are not automatically motivated by a desire to retaliate against someone. It simply means that they have failed to keep proper records. This Court does not sit as a "super-personnel department" where "disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices." Blise v. Antaramain, 409 F.3d 861, 867 (7th Cir. 2005). Instead, it is this Court's job to determine if there is a connection between the denied overtime and a retaliatory animus. In this case, Redshaw's failure to keep accurate records does not establish a retaliatory animus - it just shows that he was bad at keeping records.

And finally, Plaintiff seeks to compare the treatment she received to the treatment Baxter received. There is no dispute that on June 19th, Plaintiff was late clocking out. Then Redshaw denied Plaintiff a chance to work the overtime on the 20th because she had clocked out late the day before. Based upon Plaintiff's allegations, Redshaw created the new policy and

12

made the policy retroactive to deny her a chance to work overtime on the 20th.

Plaintiff emphasizes that Baxter had clock over-rings on May 28th, May 29th and June 1st, but was not required to miss her turn when overtime was called on June 8th. [Doc. 46 at 21.] However, this plausible discrimination was explained away by Plaintiff in her statement of facts. According to Plaintiff, Redshaw did not create the new policy until June 16th, after Baxter had her over-rings and after she had filled her next overtime opportunity on the 8th. [Doc. 46 at 6.] If any other employee had an over-ring after Redshaw created the new policy and the policy had not been applied to them, then Plaintiff could establish that she was subject to disparate treatment. Or, if Baxter had an over-ring around the same time that Plaintiff had an over-ring and Baxter had not received the same retroactive treatment, then Plaintiff could establish unequal treatment. For example, if Baxter had an over-ring on June 9th but did not have another overtime opportunity until June 25th and the policy was not applied retroactively to her, then Baxter would have received more favorable treatment than Plaintiff. However, without such evidence, Plaintiff cannot establish that she and Baxter were similarly situated.

Accordingly, Plaintiff's claims fail because she has not suffered an adverse employment action, she cannot establish that

13

there is a causal connection between her complaints and the two times that she was denied overtime, and finally, Plaintiff cannot provide adequate comparisons to similarly situated co-workers.

**IV.**
**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. 41] is GRANTED.

CASE TERMINATED.

ENTERED this  13th  day of September, 2007.

                                             s/ Joe Billy McDade
                                               Joe Billy McDade
                                    United States District Judge